968 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ermal ADAMS, Petitioner,
v.
CANADA COAL COMPANY, INC.; Kentucky Coal Producers
Self-Insurance Fund; Director, Office of Workers'
Compensation Programs, United States
Department of Labor, Respondents.
 No. 91-3706.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and JOINER,* District Judge.
 PER CURIAM.
 
 
 1
 The petitioner in this matter, Ermal Adams, appeals a decision of the Benefits Review Board of the United States Department of Labor ("Board") affirming the decision of an Administrative Law Judge ("ALJ") denying him benefits under the Black Lung Benefits Act of 1972, Pub.L. No. 92-303, 86 Stat. 150 (codified as amended in scattered sections of 30 U.S.C.). We hold that substantial evidence supports the findings of the ALJ, and accordingly, we affirm the decisions denying Adams benefits.
 
 I.
 
 2
 Adams is a 53-year-old man with a sixth-grade education. He labored for thirty-six years in the underground coal-mining industry as a deep-mine scoop operator. He began this job, which involved various duties, all underground, at the age of fifteen, and performed no other type of work until his condition prevented him from working, on May 1, 1985.
 
 
 3
 The medical evidence in this case can be summed up as follows. The record includes a total of twenty-six X-ray interpretations, sixteen of which are negative for pneumoconiosis. Thirteen of the physicians who interpreted the X-ray films were qualified "B" readers.[1] Ten of the thirteen "B" readers found no evidence of pneumoconiosis; of seventeen X-ray readings, fourteen were negative. Of a total of thirteen films,[2] three were interpreted as positive by three "B" readers, and all thirteen were interpreted as negative by one to three "B" readers. The record also contained ten pulmonary-function studies, none of which revealed results that would qualify Adams for benefits under the disability tables listed in 20 C.F.R. § 718.204(c)(1) (1991). The results of seven arterial-blood-gas studies are found in the record, none of which would qualify Adams for benefits under the disability tables listed in 20 C.F.R. § 718.204(c)(2) (1991).
 
 
 4
 Ten physicians' reports are included in the record. Adams was examined in January and June of 1985, three times in July 1985, in May and September of 1986, and in May, September, and October of 1987. Six of these reports indicate that Adams suffers from pneumoconiosis. Another report indicates some impairment of lung function, but does not indicate to what extent. Four of these reports are based on readings of X rays that were reread by two "B" readers each; seven of the eight "rereads" found the X rays negative for pneumoconioses. The reports generally found Adams capable of working, or did not address the issue, except for two: one physician reported that Adams should not work in a dusty environment, and one internist found Adams totally disabled as a result of the pneumoconiosis combined with low back pain and emphysema.
 
 
 5
 Adams filed his application for federal black-lung benefits with the United States Department of Labor on April 9, 1987. The claim was denied by the Deputy Commissioner on November 4, 1987 and transferred for hearing before an ALJ. The hearing was held on February 7, 1989. On March 7, 1989, the ALJ found that Adams was not entitled to benefits under the Act. The ALJ held that although Adams established the existence of pneumoconiosis, he failed to establish that the disease rendered him totally disabled.
 
 
 6
 Adams timely appealed this decision to the Board, which issued its decision in the matter on July 17, 1991. It also denied Adams's claim, holding that the ALJ's findings, including the finding that total disability was not demonstrated pursuant to 20 C.F.R. § 718.204(c)(1)-(3) (1991), were affirmed because they had not been challenged on appeal. Adams' other claims of error were dismissed as without merit. Finally, the Board affirmed the ALJ's finding that Adams was not totally disabled due to pneumoconiosis based on an analysis of the medical evidence. Adams now appeals the Board's decision.
 
 II.
 
 7
 Adams' appeal brings only one issue before this Court: whether the Board erred in denying Adams' claim for black lung benefits on the ground that he failed to establish that he suffers from a totally disabling respiratory impairment. A decision of the Board must be affirmed on appeal if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations. Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). This court reviews the decisions below only to decide whether they are supported by substantial evidence and are in accordance with the applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985) (per curiam); Moore v. Califano, 633 F.2d 727, 729 (6th Cir.1980). This court may not, therefore, substitute its own judgment for that of the ALJ, when the ALJ has carefully considered each part of the evidence. Cf. Knuckles v. Director, OWCP, 869 F.2d 996, 998 (6th Cir.1989) (holding that, where ALJ carefully weighs both positive and negative results of medical tests in rendering her conclusion, appeals court will not upset the ALJ's judgment).
 
 
 8
 Adams contends that the ALJ's and the Board's decisions denying him benefits are not supported by substantial evidence. He argues that the medical opinions of Drs. Clarke, Page, Penman, Myers, and Modi, in conjunction with his own testimony, constitute substantial evidence that he is totally disabled. The respondent, Canada Coal Company, Inc., Adams' last employer, urges us to reject Adams' contention, because it would call for us to reweigh the evidence, which we are prohibited from doing under our standard of review.
 
 
 9
 The doctors upon whom Adams relies are the ones who read the X rays as positive for pneumoconiosis and otherwise reported that he was disabled to some extent by the disease. The ALJ found all their opinions either flawed or otherwise not probative. For example, Dr. Page stated that Adams should not work in a dusty environment anymore. This court held in Zimmerman v. Director, OWCP, 871 F.2d 564 (6th Cir.1989), however, that this type of opinion "is a recommendation against further exposure at the coal mine, not a finding that [claimant] cannot do the work there." Id. at 567. This distinction is important, because the claimant must be physically unable to work in the mines in order to prove he is totally disabled under the Act. See Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985) (holding that presumption of disability is rebutted where petitioner is able to engage in his usual coal-mine employment). Thus, the inadvisability of returning to the mines, under this circuit's precedent, does not address a claimant's physical ability to do the work there.
 
 
 10
 Drs. Penman and Myers noted some impairment, but the ALJ reasonably noted that their reports failed to state the extent of the impairment or whether the impairment disables Adams from doing coal-mine work. The ALJ weighed Dr. Clarke's findings against the contrary findings of Drs. Harrison, Broudy, and Cooper and found them lacking, in that Clarke is a general practitioner with no expertise in the area of pulmonary disease, whereas the other doctors are pulmonary specialists. Finally, the ALJ was obviously justified in not crediting the testimony of Dr. Modi, in that he has pleaded guilty before the United States District Court for the Western District of Virginia to conspiring to defraud the United States government out of $1.3 million in black-lung disease payments, by falsely stating that patients needed oxygen equipment because of pneumoconiosis.
 
 
 11
 Accordingly, the ALJ's factual findings are supported by substantial evidence. Furthermore, no errors of law are alleged or found in this case. These being the answers to the only inquiries this Court is allowed to make in this appeal, we have no choice but to AFFIRM the denial of benefits.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 As noted by the ALJ, "a 'B' reader is a physician who has demonstrated his proficiency in assessing and classifying X-ray evidence of pneumoconiosis by successful completion of an examination conducted by on behalf of the Department of Health and Human Services.... Consequently, greater weight is given to a diagnosis by a 'B' reader." J.A. at 6, n. 2
 
 
 [2]
 Some of the thirteen X-ray films were reread by one or more physicians